JD:LMN

FILED
IN CLERK'S OFFICE
DISTRICT COURT EDNY
★ MAY 04 2012 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

12-0446M

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

EDWARD DELGADO,
   also known as "Jonathan Delgado,"

               Defendant.

To Be Filed Under Seal

AFFIDAVIT IN SUPPORT OF
ARREST WARRANT

(18 U.S.C. § 2314)

- - - - - - - - - - - - - - - - -X

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

THE PREMISES KNOWN AND DESCRIBED AS:

STRONG BOX 5, LOCATED AT REPUBLIC
AIRPORT, ROUTE 109, FARMINGDALE, NEW
YORK 11735;

T-HANGAR 21, LOCATED AT REPUBLIC
AIRPORT, ROUTE 109, FARMINGDALE, NEW
YORK 11735; and

HANGAR 2, LOCATED AT REPUBLIC
AIRPORT, ROUTE 109, FARMINGDALE, NEW
YORK 11735

To Be Filed Under Seal

AFFIDAVIT IN SUPPORT OF
SEARCH WARRANTS

(18 U.S.C. § 2314)

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

       MATTHEW FARRUGIA, being duly sworn, deposes and says that he is a Special Agent with the U.S. Department of Transportation, Office of Inspector General ("OIG"), duly appointed according to law and acting as such.

In and about and between February 2011 and May 2012, within the Eastern District of New York and elsewhere, the defendant EDWARD DELGADO, also known as "Jonathan Delgado," together with others, did knowingly and intentionally transport, transmit and transfer in interstate commerce goods, wares and merchandise, of the value of $5,000 or more, to wit: avgas and jet fuel, knowing the same to have been stolen, converted and taken by fraud.

(Title 18, United States Code, Sections 2314).

Upon information and belief there is probable cause to believe that there will be kept and concealed at THE PREMISES KNOWN AND DESCRIBED AS 1) STRONG BOX 5, LOCATED AT REPUBLIC AIRPORT, ROUTE 109, FARMINGDALE, NEW YORK 11735 ("SUBJECT PREMISES #1"); 2) T-HANGAR 21, LOCATED AT REPUBLIC AIRPORT, ROUTE 109, FARMINGDALE, NEW YORK 11735 ("SUBJECT PREMISES #2"); and 3) HANGAR 2, LOCATED AT REPUBLIC AIRPORT, ROUTE 109, FARMINGDALE, NEW YORK 11735 ("SUBJECT PREMISES #3) (collectively, "THE SUBJECT PREMISES"): (1) fuel containers and materials related to the collection of fuel and its distribution; (2) books and records, including the names, addresses and telephone numbers of fuel suppliers and customers, which books and records would reveal the identities of confederates in the theft of fuel; and (3) cabinets, locked or otherwise, containing any of the above items, all of which constitute evidence, fruits, and instrumentalities of a violation of Title 18, United States Code, Section 2314.

The source of your deponent's information and the grounds for his belief are as follows:

1. I have been a Special Agent with OIG for approximately eleven years. During my tenure with OIG, I have investigated various federal and state criminal violations, including crimes involving sabotage and theft of airline equipment and parts.

2. Because this affidavit is being submitted for the purpose of establishing probable cause for arrest and for the search of the SUBJECT PREMISES, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. The information set forth below is based upon my experience and training as a Special Agent, my review of police reports, documents and other evidentiary items, and my discussions with other law enforcement agents and witnesses. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only.

I. BACKGROUND

3. Atlantic Aviation is a publicly traded company that holds a contract with the State of New York to run and operate Republic Airport, located in Farmingdale, New York. As part of its operations at Republic Airport, Atlantic Aviation, inter alia, maintains the facilities at the airport, including the grounds; rents out hangars on site to customers for the

purpose of storing small engine aircraft; and sells fuel to customers for use in their aircraft, specifically avgas and jet fuel. Avgas is a specific type of fuel mainly used for small engine aircraft. Jet fuel is in the diesel fuel family, and is used for larger aircraft, among other purposes.

4. Avgas and jet fuel are stored in stationary fuel pumps located at the airport and dispensed from the fuel pumps into a fuel tank located on a fuel tanker truck. In order for a plane to be refueled, a fuel tanker truck equipped with its own filtration system pulls up alongside an aircraft and directly refuels the plane's engine through a hose and nozzle. As fuel leaves through the hose and nozzle, the fuel gets filtered by the truck's filtration system for quality purposes in accordance with Federal Aviation Administration ("FAA") regulations. For safety reasons, federal regulations require that all airplane fuel must go through the above-described fuel filtration process before entering an airplane.

II. DESCRIPTION OF THE SUBJECT PREMISES

5. SUBJECT PREMISES #1 is an aircraft hangar, similar to a large storage shed, but capable of housing a small aircraft. It is a prefabricated metal structure, off-white in color, with dimensions approximately 50 x 50 feet. It has a 13 foot aircraft hangar door. It is located on the southside of Republic Airport, adjacent to Route 109. "SB 5" is labeled above the hangar door. It is rented to two individuals. SUBJECT PREMISES #1 is the same

5

structure, or hangar, in which DELGADO was observed on a hidden video camera moving fuel containers (see paragraph 14).

6.   SUBJECT PREMISES #2 is an approximate 1,075 square foot aircraft hangar, capable of housing one aircraft. It is a metal structure with a 40 foot high door. It is tan in color. It is located in the third T-Hangar row on the southside of Republic Airport, adjacent to Route 109. The number "21" is labeled above the hangar door. It is rented by one individual.

7.   SUBJECT PREMISES #3 is a 24,000 square foot aircraft hangar. The dimensions are approximately 120 x 200 feet long. It houses approximately 27 aircraft. The building is tan in color, with green doors. It has two doors, both 20-foot high and 120 feet long. The doors are located on the east and west ends of the building. The number "54" is written in black at both ends of the building, by the doors. SUBJECT PREMISES #3 is rented by 15 individuals. It is located on the southside of Republic Airport, south of Lima Taxi Way (an airport taxi lane), and north of Route 109.

III. PROBABLE CAUSE TO ARREST THE DEFENDANT EDWARD DELGADO

8.   Since 2004, the defendant EDWARD DELGADO has been employed by Atlantic Aviation in various capacities, most recently as a Line Technician. As a Line Technician, his job responsibilities include, inter alia, checking the fuel at the bottom of a fuel tank on a fuel tanker truck for contaminants. Sediments and other contaminants may settle at the bottom of a fuel tank and thus periodic testing is necessary for safety and

quality control. To filter fuel retrieved from the bottom of a fuel tank, a Line Technician must retrieve a sample of fuel from a spout located at the bottom of the tank and test that fuel for contaminants. If the fuel has contaminants, the Line Technician is responsible for placing that contaminated fuel in a filtering system, or "recycling system," which removes the contaminants. Thereafter, the uncontaminated fuel is then reintroduced into the fuel tank by the Line Technician and sold to Atlantic Aviation customers. DELGADO generally works the night-shift, starting work around 10:00 p.m. until 6:00 a.m. the next morning. During the hours DELGADO works, there are generally no other employees who work outdoors near the fuel pumps, fuel tanker trucks, or hangars, nor with job responsibilities requiring them to use a company truck.

9. Starting around early 2011, employees at Atlantic Aviation began noticing consistent inventory losses in the amount of avgas and jet fuel the company maintained in its fuel pumps at Republic Airport. Atlantic Aviation initiated an internal investigation. As part of the investigation, Atlantic Aviation consulted with the manufacturer of their accounting system, accounted for variables in evaporation of gas, and accounted for potential calibration anomalies with the measuring equipment, among other things. However, the losses still remained unexplained.

10. Pursuant to its internal investigation, employees at Atlantic Aviation reviewed the footage on the security cameras

installed around the airport. The location and presence of these cameras are known to all its employees. On the footage, the movements of an individual on the grounds were suspicious and irregular. During the time period of these suspicious movements, DELGADO was the only employee whose job responsibilities required him to be outside.

11. For instance, on or about February 28, 2012 at approximately 2:57 a.m., the video footage shows a white pickup truck, owned by Atlantic Aviation, pull up to the self service area behind the fuel pump. The individual driving the truck then removed two five gallon fuel containers from the pickup bed and approached the fuel pump, going out of sight of the sight of the camera. When the individual returned into the view of the camera a minute later, based upon his body language, it is clear that the fuel containers are noticeably heavier, likely having just been filled with fuel. The individual then places the fuel containers in the pickup truck and drives out of the view of the camera.

12. Similarly, on or about March 13, 2012, at approximately 12:04 a.m., an individual is observed on the video footage removing two five gallon fuel containers from the back of an Atlantic Aviation pickup truck. This individual is then observed walking to the fuel pumps with the containers. A couple minutes later, the individual is seen walking away from the fuel pumps, and based upon his body language, it is clear that the containers are heavier, likely having just been filled with fuel.

The fuel containers are then placed on the bed of the pickup truck and the individual drives away.

13. Moreover, on or about March 15, 2012, at approximately 12:49 a.m., an individual is observed on the video footage carrying two five gallon fuel containers to the fuel pump. After a short period of time, the individual then walks away from the fuel pump with the containers noticeably heavier, likely having just been filled with fuel.

14. As part of the internal investigation into the theft of fuel, Atlantic Aviation also installed hidden cameras. One of the hidden cameras was placed inside SUBJECT PREMISES #1, an aircraft hangar rented by two customers. On the video footage, DELGADO is observed in SUBJECT PREMISES #1 unlocking a padlocked storage cabinet. The storage cabinet is filled with what appears to be multiple five gallon fuel containers. DELGADO is observed on the hidden footage removing some of the fuel containers, some of which are empty based upon their weight, but others of which are filled with fuel, based again on their obvious weight. After removing some of these fuel containers, DELGADO then closed and locked the storage cabinet.

15. On or about March 30, 2012, at approximately 11:45 p.m., a confidential source who is also an employee at Atlantic Aviation participating in the internal investigation ("CS"), observed a gray or green van and an Atlantic Aviation truck parked next to a hangar at the airport. The van and the Atlantic Aviation truck were parked with their tail-ends facing each

other. The CS, who knows DELGADO, recognized DELGADO next to the Atlantic Aviation truck. The driver of the van was standing near DELGADO. The CS then observed DELGADO take empty five gallon containers and fill them with fuel from the fuel tanker trunk. DELGADO used the spout at the bottom of the tanker, filling the containers with fuel that had not been filtered through the hose and nozzle filtration system and which possibly could contain contaminants. DELGADO filled up several containers in this manner with fuel. DELGADO gave some of the filled containers of fuel to the driver of the van, who thereafter drove off the airport premises with the filled fuel containers. The CS followed the van off the premises for a short period of time in his car, but then returned to the airport.

16. After returning to the airport, the CS observed DELGADO enter an Atlantic Aviation truck and drive to a hangar. At the hangar, DELGADO exited the truck and entered the hangar, emerging a short while later from it carrying several five gallon fuel containers. The CS thereafter observed DELGADO fill the containers with fuel from the fuel tanker truck, again from the bottom spout rather than the hose and nozzle. DELGADO then placed the filled fuel containers in the Atlantic Aviation truck and drove to several hangers, delivering the fuel containers to each of the hangars. The CS took several photographs of DELGADO's movements that evening during the incident described above.

17. Agents have reviewed the fuel purchase records for one of the customers who rents a hanger in which DELGADO dropped off filled fuel containers. The customer who rents that particular hangar has not purchased fuel from Atlantic Aviation since mid-2011 but has taken flights since that time. As recently as April 21, 2012, that customer filed a flight plan reflecting that he made an interstate flight between Ohio and Republic Airport with his airplane.

18. As part of the internal investigation, Atlantic Aviation authorized the placement of a GPS tracking system of the company truck driven by DELGADO on airport property during his shift. The GPS tracking data reflects that the truck DELGADO routinely drives to the hanger where the aforementioned customer in paragraph 14 above stores and maintains his aircraft. DELGADO's job duties do not require him to go to that hangar, let alone frequently.

19. On May 4, 2012, OIG agents arrested DELGADO at his residence. DELGADO was advised of his <u>Miranda</u> rights, which he affirmatively stated he understood and waived. DELGADO thereafter stated, in sum and substance and in part, that he has illegally been draining fuel from the bottom spout of the fuel tanks and selling the fuel to various customers of Atlantic Aviation. DELGADO stated that he knew by taking fuel from the bottom spout that it was contaminated fuel but that this was not his concern. DELGADO admitted to stealing fuel in this manner for approximately two years. DELGADO also admitted that at some

point last week, he sold jet fuel to a customer who arrived at the airport in a van. As recently as April 30, 2012, DELGADO stated that he sold 50 gallons of jet fuel to that same customer. DELGADO stated that he sells the fuel between $2.50 and $3.00 per gallon, all of which is DELGADO's profit. DELGADO stated that many times he brings filled fuel containers to a customer's hangar, and physically puts the fuel into the customer's aircraft engine, leaving any excess filled fuel containers in that hangar for future use by that customer.

20. I know that planes arriving from interstate flights land at Republic Airport, and that planes departing on interstate destinations take off from the airport.

21. Atlantic Aviation estimates that the monetary value of its fuel loss since early 2011 to the present has been at least $100,000.

IV. PROBABLE CAUSE TO SEARCH THE SUBJECT PREMISES

A. Subject Premises #1

22. Paragraphs 1-21 are repeated as if alleged herein.

23. As discussed above (paragraph 14), DELGADO was observed on a hidden video camera moving five gallon fuel containers, many of which appeared filled with fuel.

24. Moreover, as part of his post-arrest statements, and in addition to those described earlier, DELGADO stated that the cabinet and the fuel contained therein in SUBJECT PREMISES #1 were purchased by him. DELGADO stated that the cabinet currently contains numerous fuel containers, which he fills with fuel.

12

DELGADO stated that the renters of SUBJECT PREMISES #1 are unaware that he stores the containers there and did not purchase fuel from him.

  B. <u>Subject Premises #2</u>

  25. Paragraphs 1-21 are repeated as if alleged herein.

  26. As part of his post-arrest statements, and in addition to those described earlier, DELGADO stated that the renter of SUBJECT PREMISES #2 buys fuel from him. DELGADO further stated that DELGADO keeps fuel containers in SUBJECT PREMISES #2. DELGADO stated that he sells fuel to the renter of SUBJECT PREMISES #2 once or twice a week.

  C. <u>Subject Premises #3</u>

  27. Paragraphs 1-21 are repeated as if alleged herein.

  28. As part of his post-arrest statements, and in addition to those described earlier, DELGADO stated that the renter of SUBJECT PREMISES #3 buys fuel from him. DELGADO further stated that the renter of SUBJECT PREMISES #3 owns a locked cabinet in that hangar. DELGADO stated he has a key for that cabinet and that he (DELGADO) keeps fuel containers in that cabinet, which he fills with fuel.

  29. Based on my training and experience as a law enforcement officer and in light of the investigation conducted thus far, there is probable cause to believe that THE SUBJECT PREMISES are being used as locations to store fuel containers and other items pertaining to the distribution of fuel.

        \* \* \*

30. I have learned that the renter of Subject Premises # 3 intends to come to Republic Airport in the morning on May 5, 2012 and enter Subject Premises #3 so as to use his/.her aircraft. Moreover, the renters of Subject Premises #1 and Subject Premises #2 may also, at this point, enter those respective Subject Premises to use their aircraft. Therefore, I request authority to search all three Subject Premises anytime, day or night.

13

WHEREFORE, your deponent respectfully requests that an arrest warrant issue for the defendant EDWARD DELGADO, also known as "Jonathan Delgado," and that he be dealt with according to law.

WHEREFORE, your deponent requests that a search warrant be issued directing Special Agents of OIG, working in conjunction with the Federal Bureau of Investigation ("FBI") and any other authorized law enforcement officers to search THE PREMISES KNOWN AND DESCRIBED AS 1) STRONG BOX 5, LOCATED AT REPUBLIC AIRPORT, ROUTE 109, FARMINGDALE, NEW YORK 11735 ("SUBJECT PREMISES #1"); 2) T-HANGAR 21, LOCATED AT REPUBLIC AIRPORT, ROUTE 109, FARMINGDALE, NEW YORK 11735 ("SUBJECT PREMISES #2"); and 3) HANGAR 2, LOCATED AT REPUBLIC AIRPORT, ROUTE 109, FARMINGDALE, NEW YORK 11735 ("SUBJECT PREMISES #3) (collectively, "THE SUBJECT PREMISES") for: (1) fuel containers and materials related to the collection of fuel and its distribution; (2) books and records, including the names, addresses and telephone numbers of fuel suppliers and customers, which books and records would reveal the identities of confederates in the theft of fuel; and (3) cabinets, locked or otherwise, containing any of the above items, all of which constitute evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 2314.

14

In addition, it is respectfully requested that this affidavit for an arrest warrant and search warrants be filed under seal until further notice.

_____
MATTHEW FARRUGIA
Special Agent
Department of Transportation,
Office of the Inspector General

Sworn to before me this
4th day of ~~March~~, 2012
        May

/s/ Viktor Pohorelsky, MJ
_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK